UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>SONYA DUBRAY,<br><br>  Defendant. | CR. 16-50100-02-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Sonya Dubray, appearing *pro se*, filed a motion for compassionate release.  (Docket 240).  Pursuant to Standing Order 32-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Ms. Dubray's motion.  (Docket 242).  For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 23-02**

Standing Order 23-02,[1] captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)."  (SO 32-02).  Under the

---

[1]See https://www.sdd.uscourts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02").

order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act. If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney." Id. at ¶ 1.

**FACTUAL BACKGROUND**

On November 19, 2019, Ms. Dubray pled guilty to accessory to second degree murder in violation of 18 U.S.C. § 3. (Docket 180). Ms. Dubray was sentenced to a term of imprisonment for 114 months and a term of supervised release for 18 months. (Docket 222). According to Ms. Dubray's presentence report ("PSR"), "[b]ased upon a total offense level of 27 and a criminal history category of I, the guideline imprisonment range is 70 months to 87 months." (Docket 206 at ¶ 60). Ms. Dubray's maximum term of imprisonment was 15 years. Id. at ¶ 59. The court granted the government's motion for upward variance, noting "[s]erious offenses require serious punishment." (Docket 229 at pp. 58-59).

Ms. Dubray is an inmate at the United States Penitentiary in Waseca, Minnesota ("FCI Waseca"). See Federal Bureau of Prisons Inmate Locator,

https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.  Ms. Dubray has a scheduled release date of March 8, 2027.  (Docket 243 at p. 1).

## MS. DUBRAY'S CLASSIFICATION

On December 8, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 241).  They jointly "agree that this case should be categorized as a Low Priority case."  Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i).  Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018).  The inmate bears the

burden to establish that compassionate release is warranted.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).  The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion.  United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons."  Congress did not define what constitutes "extraordinary and compelling."  28 U.S.C. § 994(t).  Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons ("BOP").  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct.

4

2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Ms. Dubray submitted a request for compassionate release to FCI Waseca's Warden.  The request was denied on October 27, 2022.  (Docket 242 at p. 260).  She satisfied her exhaustion requirement.

### B. Defendant's Motion for Compassionate Release

Ms. Dubray has three arguments that she believes qualify as extraordinary and compelling reasons which require compassionate release. (Docket 240).

> First, she asserts that she suffers from serious medical conditions that make her highly vulnerable to serious illness or death as a result of the ongoing coronavirus epidemic.  Defendant claims she has suffered from Tuberculosis since 1998, which resulted in damage to her lungs with difficulty breathing.  In addition, she tested positive for COVID-19 in September 2019, and now experiences difficulty in breathing and swallowing.  Given her current medical condition, Defendant claims she is vulnerable to serious complications or death if she becomes reinfected from COVID-19 . . . . [she] has multiple risk factors for becoming severely ill should she contract COVID-19.  Indeed, she is a former smoker with a family history of hypertension, diabetes, and heart disease which she currently takes Propanol (prescribed to treat high blood pressure and coronary artery disease)."

Id. at p. 2.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions.  The Centers for Disease Control and Prevention ("CDC") updated its current understanding of these risks.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-with-medical-conditions.html.  The CDC has identified the following conditions as ones that do pose an increased risk of severe illness from COVID-19, including cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (a BMI of 30 or higher), diabetes, moderate to severe asthma, cystic fibrosis, hypertension and liver disease.  Id.

Ms. Dubray's medical records confirm she has latent tuberculosis ("LTBI").  Ms. Dubray is being treated for LTBI while incarcerated.  (Docket 242 at pp. 37, 41-42, 72, 117, 149-50, 175, 178 & 182-83).  Ms. Dubray has a

history of hypertension and smoking.  Id. at p. 174.  She has a family history of heart disease and diabetes.  Id.  She is prescribed medications, including Isoniazid, Rifapentine and Pyridoxine.  Id. at p. 38, 78-79, 192 & 243.  She has refused medication and treatment on numerous occasions.  Id. at pp. 1, 5, 35, 37-38, 50, 52, 72, 118, 127, 129, 150 & 231.

     Ms. Dubray has a variety of medical conditions, but she appears to be receiving proper care while incarcerated.  "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Gould, 4:19-CR-40017-01, 2021 WL 872694, at 4 (D.S.D. Aug. 12, 2020).  Further, Ms. Dubray's age and health conditions do not prevent her from providing self-care in a correctional facility setting.  Her medical conditions do not amount to an extraordinary and compelling circumstance.

     Against Ms. Dubray's medical conditions, the court must weigh the steps the BOP has undertaken to manage the spread of COVID-19 within the facilities and to treat inmates who become infected.  The BOP made significant changes to correctional operations since the pandemic started in early 2020. See COVID-19 Coronavirus, https://www.bop.gov/ coronavirus/ (last visited Apr. 12, 2023); see also www.bop.gov/coronavirus/ (BOP's "action plan" described in detail).  These include sanitary and safety measures, restrictions on movement and visitation restrictions.  Id.

     The court believes Ms. Dubray's medical conditions are appropriately managed at FCI Waseca, as the facility is engaged in appropriate efforts to

protect inmates against the spread of COVID-19 and the facility would act to treat any inmate who does contract COVID-19. The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. See id. At FCI Waseca, 120 staff members and 965 inmates are vaccinated. See COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 12, 2023). At FCI Waseca, there have not been any deaths due to COVID-19 by inmates or staff. Id. Currently there are no inmates with COVID-19 and 331 inmates have recovered. Id. There are currently no staff with COVID-19 and 61 staff have recovered. Id. This persuades the court that FCI Waseca has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who contract COVID-19.

 Ms. Dubray's health concerns are understandable, but her medical conditions coupled with the present conditions at FCI Waseca do not establish extraordinary and compelling reason to justify compassionate release.

 Second, Ms. Dubray states "BOP administration's management of the pandemic at FCI Waseca hinders her ability to work, participate in programing and effectively rehabilitate. . . . Ms. Dubray wants to let the court [know] the facility had been locked down over two years of her incarceration with numerous interruptions to services, training, and work assignments." (Docket

240 at p. 3). Ms. Dubray submitted a "Response to the Government's Response" stating the housing conditions inmate to officer ratio is inadequate. (Docket 244 at p. 1). This motion is not the proper vehicle for Ms. Dubray to challenge the conditions of her confinement. See United States v. Bear, CR. 19-10034-01, 2021 WL 1925488, at *2 (D.S.D. May 13, 2021). Claims regarding conditions of confinement must typically be brought in a separate civil action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Id. Further, even if this was the correct avenue, Ms. Dubray has not approached the demanding threshold for a showing of an extraordinary and compelling circumstance in regard to her prison conditions.

Third, Ms. Dubray states

> The negative impact of her medical issues, separation from family and rehabilitative efforts since conviction have instilled in [Ms. Dubray] a resolve to renounce her former lifestyle. Her family does not believe she deserves to sit the remainder of her time in such harsh living environments when she has a home, job and life outside the confines of a BOP facility.

(Docket 240 at p. 3).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." United States v. Hodgin, No. 4:15-CR-40110-02, 2021 WL 928179, at *3 (D.S.D. Mar. 11, 2021) (quoting United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020)). Although the court is allowed to determine if a situation fits under the catch-all exception, "[r]ehabilitation of

9

the defendant alone shall not be considered an extraordinary and compelling reason" to justify compassionate release. United States v. Brown, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) (quoting 28 U.S.C. § 994(t)). "For the word 'alone' to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion." Id.; See also United States v. Contreras, 504 F. Supp. 3d 1052, 1060 (D.S.D. 2020) (The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release.). The court already explained why compassionate release is not justified on Ms. Dubray's other grounds, leaving the sole remaining ground for release to be her rehabilitation and "resolve to renounce her former lifestyle." (Docket 240 at p. 3). Because rehabilitation alone cannot justify compassionate release, Ms. Dubray's motion must be denied.

### C. **3553(a) Factors**

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed—
   a. to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
   b. to afford adequate deterrence to criminal conduct;
   c. to protect the public from further crimes of the defendant; and
   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

In Ms. Dubray's case, the nature and circumstances of the offense—accessory to second degree murder—is extremely serious. The sentencing court noted, the offense was "extremely serious. Serious offenses require serious punishment." (Docket 229 at p. 59). This factor weighs against release.

Ms. Dubray's criminal history contains convictions for driving under the influence and theft. (Docket 206 at ¶¶ 24-30). While incarcerated, Ms. Dubray received one write up, on December 9, 2020, for being insolent to a staff member. (Docket 242 at p. 262).

The need to send a message to the community at large is a factor to consider. The sentencing court noted "severe sentences" send a message to the community. (Docket 229 at p. 60).

Ms. Dubray failed to establish that the § 3553(a) factors support relief. Ms. Dubray was sentenced to 114 months imprisonment, which is an upward variance from the advisory guidelines range of 70-87 months. This sentence is appropriate for the serious crime she committed.

## ORDER

Based upon the above analysis, it is

ORDERED that defendant's motion for compassionate release (Docket 240) is denied.

Dated July 12, 2023.

                                          BY THE COURT:

                                          /s/ *Jeffrey L. Viken*
                                          JEFFREY L. VIKEN
                                          UNITED STATES DISTRICT JUDGE